UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ZUBEARU BETTIS,

                                    Plaintiff,

          - against -

SGT. M. VILLANI, C.O. LOTTS, and RAYMOND
ST. AUBURN,

                                    Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 21-CV-5208 (CS)

<u>Appearances</u>:

James A. Randazzo
Drew W. Sumner
Portale Randazzo LLP
White Plains, NY
*Counsel for Defendants*

<u>Seibel, J.</u>

          Before the Court is the motion for summary judgment of Defendants Sergeant ("Sgt.")

M. Villani, Correction Officer ("C.O.") Lotts, and C.O. Raymond St. Auburn.  (ECF No. 69.)[1]

For the following reasons, the motion is GRANTED.

**I.     <u>BACKGROUND</u>**

       **A.  <u>Facts</u>**

          The following facts are taken from Defendants' Local Civil Rule ("LR") 56.1 Statement

and the supporting exhibits, and are undisputed unless otherwise noted.

---

[1] The Clerk of Court is respectfully directed to update the docket to reflect the correct spelling of Sgt. M. Villani's and Raymond St. Auburn's names.  The Clerk of Court is also respectfully directed to terminate Putnam County as a Defendant.  The Court dismissed the claims against Putnam County on May 23, 2022.  (*See* Minute Entry dated May 23, 2022.)

From December 21, 2016 through June 7, 2018, Plaintiff Zubearu Bettis was incarcerated at the Putnam County Correctional Facility ("PCCF" or "the Facility") awaiting sentencing for illegal possession and brandishing of a firearm.  (ECF No. 72 ("Ds' 56.1 Stmt.") ¶¶ 1-2.)  During his intake, the Facility issued him a rulebook containing the Inmate Rules & Regulations, including policies and procedures for making complaints against the Facility or its staff, and filing formal grievances.  (*Id.* ¶¶ 3-4.)  The Inmate Rules & Regulations are provided to all inmates and implement the New York State Minimum Standards and Regulations for Management of County Jails and Penitentiaries ("the Minimum Standards"), which require an inmate to file a grievance within five days of the act or occurrence giving rise to the grievance.  (*Id.* ¶¶ 5-6.)  Although the rulebook does not contain the five-day requirement, it states, "See posted form and time lines throughout the facility."  (ECF No. 71 ("Randazzo Decl.") Ex. C at 52.)  Between March 14, 2018 and June 1, 2018, Plaintiff filed at least seven separate grievances with the Facility pursuant to the Minimum Standards and the Inmate Rules & Regulations.  (Ds' 56.1 Stmt. ¶ 7.)  Plaintiff also testified that he was familiar with the grievance procedures and the Minimum Standards.  (*See id.* ¶¶ 8-9.)

On June 5, 2018, around 4:43 p.m., non-Defendant C.O. Tommarello issued Plaintiff a misbehavior report for excessive noise and obstruction, and Plaintiff refused to sign it.  (*Id.* ¶¶ 10-11.)  Officers, including Sgt. Alfred Villani, informed Plaintiff that if he refused to sign the misbehavior report, he would be removed from his cell and transported to the special housing unit ("SHU").  (*Id.* ¶¶ 12-13.)  Plaintiff chose not to voluntarily comply with the transfer to the SHU, understanding that this could result in officers forcibly extracting him from his cell.  (*Id.* ¶¶ 15-16.)  A few minutes after Plaintiff told Sgt. Alfred Villani that he would not sign the report, Plaintiff observed officers at his cell wearing protective gear, including one officer with a riot

shield.  (*Id.* ¶¶ 17-18; Randazzo Decl. Ex. A ("P's Depo.") at 37:4-8.)  He knew that the officers would use force to remove him, but he still chose not to comply.  (Ds' 56.1 Stmt. ¶ 19; P's Depo. at 37:9-17.)  The officers present were Sgt. Alfred Villani and C.O.s Raymond St. Auburn, Anthony Colello, John Cassidy, and Tyrone Lotts.  (Ds' 56.1 Stmt. ¶ 20.)  Sgt. Michael Villani was not present and did not participate in the cell extraction.  (*Id.* ¶ 21.)[2]  Plaintiff admitted that he refused to comply with handcuffing and the officers used force to remove him.  (*Id.* ¶¶ 22-24.)  Plaintiff testified that Sgt. Alfred Villani punched him in the face, (P's Depo. at 44:12-21; 45:22-46:8),[3] C.O. Lotts twisted his arm back and damaged his shoulder, (*id.* at 44:21-22), C.O. Collelo pressed the bottom of a shield into his shins and stunned him in the left buttock for "a second or two," (*id.* at 45:1; 50:15-51:5; 70:9-72:13), C.O. Cassidy punched him in the gut, (*id.* 44:22) and C.O. St. Auburn twisted his ankle and leg and grabbed his crotch, (*id.* at 44:23-24; 52:22-53:7).  After the officers succeeded in handcuffing Plaintiff, he complained that the handcuffs were too tight, and the officers removed them within "several minutes."  (D's 56.1 Stmt. ¶¶ 34-35; P's Depo. at 54:15-55:2.)  Once Plaintiff was handcuffed, the incident was "over with."  (P's Depo. at 61:16-62:3; *see* Ds' 56.1 Stmt. ¶¶ 36-37.)

After Plaintiff was transported to the SHU, a PCCF nurse attended to him and asked if he was hurt, and he showed her bruises, scrape marks and swelling on his face and hands.  (*See* Ds' 56.1 Stmt. ¶ 56; P's Depo. at 49:14-23.)  He remained in the SHU for about two days, until he

---

[2] Sgt. Michael Villani and Sgt. Alfred Villani were both corrections sergeants at PCCF. (Ds' 56.1 Stmt. ¶¶ 48-49.)  In the initial complaint, Plaintiff listed Sgt. Villani but did not indicate which Sgt. Villani he intended to sue.  (*See* ECF No. 2.)  In the Amended Complaint, Plaintiff listed Sgt. M. Villani as the defendant.  (*See* ECF No. 12.)

[3] Defendants' 56.1 Statement indicates that Plaintiff testified that Sgt. Alfred Villani punched him in the head, (*see* Ds' 56.1 Stmt. ¶ 28), but Plaintiff testified that Sgt. Villani punched him in the face, (P's Depo. at 44:12-14; 45:22-46:8).

was transferred out of PCCF and into the custody of the U.S. Bureau of Prisons ("BOP") on June 7, 2018. (*See* Ds' 56.1 Stmt. ¶¶ 41, 44; P's Depo. at 68:10-17.) Plaintiff was moved from PCCF to the Metropolitan Correction Center, New York ("MCC") and then to the Metropolitan Detention Center, Brooklyn, where he was placed in the SHU. (P's Depo. at 49:9-13.)

Plaintiff did not file a grievance concerning the incident on June 5, 2018. (*See* Ds' 56.1 Stmt. ¶ 42; P's Depo. at 68:10-19.) He testified that he filled out the grievance form, but "never got a chance to turn it in," (P's Depo. at 78:10-14; *see also id.* at 68:10-19), although he had a copy of it while in BOP custody, (*see* Ds' 56.1 Stmt. ¶¶ 43-45; P's Depo. at 76:14-22, 78:10-14).

Plaintiff testified that after he was transferred back to MCC on July 6 or July 7, he saw a doctor on July 13 who examined him, documented swelling, bruises, and cuts on his body, tested his hands for sensation, and ordered a test to further examine the loss of sensation in his hands, which test never took place. (*See* P's Depo. at 52:5-21.) He testified that he received an X-ray which showed "spurring" in his shoulder. (*See id.* at 58:13-17.) Plaintiff further testified that he continues to have pain, "popcorn noises," and "popping sounds" in his shoulder when he tries to exercise and that he has loss of sensation in his hands. (*See id.* at 83:13-84:21.)

## B.  Procedural History

On June 11, 2021, Plaintiff commenced this lawsuit against the Putnam County Correctional Facility, Sgt. Villani, C.O. Lotts, three John Doe corrections officers, one John Doe sheriff, and one Jane or John Doe kitchen staff. (ECF No. 2.) The complaint, brought under 42 U.S.C. § 1983, alleged that Defendants used excessive force against him, confiscated his religious items, and retaliated against him by serving him pork chops during Ramadan. (*See id.*) On July 1, 2021, the Court dismissed the claims against the Facility and directed the Clerk to add Putnam County as a defendant. (*See* ECF No. 6 at 2.) On September 17, 2021, and September

20, 2021, Plaintiff filed the Amended Complaint in two parts. (*See* ECF Nos. 12, 14.)[4]  In the Amended Complaint, Plaintiff added Sgt. Richard Bartley and C.O. Raymond St. Auburn, and identified the previous John/Jane Doe defendants as C.O.s Steven Napolitano, John Cassidy, and Anthony Colello, Sheriff R. Langley, Jr., and kitchen staffers Aaron Cioppa and Antonios Loukrezis. (ECF No. 12.)  He also requested to add the BOP as a defendant. (*Id.* at 7.)[5]

On October 7, 2021, Defendants filed a letter requesting a pre-motion conference in anticipation of a motion to dismiss. (ECF No. 23.)  On November 12, 2021, the Court held a pre-motion conference, (*see* Minute Entry dated Nov. 12, 2021), and Defendants filed the motion to dismiss on December 17, 2021, (*see* ECF No. 29)  On May 23, 2022, I granted in part and denied in part Defendants' motion to dismiss. (*See generally* Randazzo Decl. Ex. K.)  I dismissed the claims against Defendants Cioppa, Loukrezis, Cassidy, Colello, Langley, Bartley, Napolitano, and Putnam County, and denied Plaintiff's request to add BOP as a defendant. (*See id.* at 23:7-10; 27:5-6; 28:20-30:9; 30:19-31:3.)  Thus, I determined that the case would go forward against Sgt. Villani, C.O. Lotts, and C.O. St. Auburn for the excessive force and retaliation claims under § 1983, (*see id.* at 32:14-17), and granted Plaintiff leave to amend the complaint by July 8, 2022 to modify claims that were not time-barred, (*see id.* at 31:19-32:11). Plaintiff did not amend the complaint.

---

[4] The Court deemed the document filed on September 20, 2021 to be a continuation of the Amended Complaint filed on September 17, 2021. (*See* ECF No. 15.)

[5] Citations to Plaintiff's Amended Complaint use the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

On July 20, 2022, Defendants answered the Amended Complaint.  (*See* ECF No. 44.)[6]

On September 2, 2022, the Court held a scheduling conference during which the Court gave

Plaintiff another opportunity to amend the complaint by November 2, 2022, (*see* Minute Entry

dated Sept. 2, 2022), which deadline the Court, at Plaintiff's request, later extended to November

16, 2022, (*see* ECF Nos. 54, 55).  Plaintiff did not amend the complaint.

On July 14, 2023, following discovery, Defendants filed a pre-motion letter in

anticipation of a motion for summary judgment, (ECF No. 60), and Plaintiff responded on July

25, 2023, (ECF No. 66).  The instant motion followed.  (*See* ECF No. 69.)  Plaintiff has not

opposed the motion,[7] but I have considered the arguments he made in his response to

Defendants' pre-motion letter.

## II.    **<u>LEGAL STANDARD</u>**

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).[8]  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the

suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be

---

[6] Sgt. M. Villani is the named Defendant, but the answer erroneously lists the Defendants as Sgt. Alfred Villani, C.O. Lotts, and C.O. St. Auburn.  (*See* ECF No. 44 at 1.)

[7] On June 20, 2024, the Court gave Plaintiff a final opportunity to oppose the motion, and the Court indicated that failure to do so by the Court's deadline would result in the motion being deemed fully submitted.  (ECF No. 80.)

[8] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.  The Court will send Plaintiff copies of all unpublished decisions cited in this Opinion and Order.

counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) ("When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor.").  "In considering a motion for summary judgment, the Court cannot render credibility assessments, which are reserved for the jury." *Jordan v. Gifford*, No. 19-CV-1628, 2022 WL 3106965, at *21 (D. Conn. Aug. 4, 2022).

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to

testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). "If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

In addition, *pro se* litigants must be afforded "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014). But "[a] *pro se* party's bald assertion, unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Walker v. Vaughan*, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002).

"Where, as here, a motion for summary judgment is unopposed by a *pro se* plaintiff, courts may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial, and in doing so, may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement." *Murray v. Dabo*, No. 22-CV-4026, 2024 WL 1421119, at *4 (S.D.N.Y. Feb. 2, 2024), *report and recommendation adopted*, 2024 WL 964599 (S.D.N.Y. Mar. 5, 2024). Thus, the Court "may grant an unopposed motion for summary judgment against a *pro se* plaintiff if: (1) the *pro se* plaintiff has received adequate notice that failure to file a proper opposition may result in dismissal of the case; and (2) the facts as to which there is no genuine dispute show that the moving party is entitled to a judgment as a matter of law." *Id.* "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary

matter is presented." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d

Cir. 2004). Here Defendants served Plaintiff with the required notice, pursuant to Local Civil

Rule 56.2, (*see* ECF Nos. 73-74, 77, 81), so I turn to whether the facts show no genuine dispute

that Defendants are entitled to judgment.

III. **DISCUSSION**

A. **Exhaustion Under the Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for "all

inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516,

532 (2002). Exhaustion of available administrative remedies "must be complete prior to

commencement of suit" and "[t]he fact that a grievance is filed, or the process is completed,

subsequent to commencement of suit will not salvage an otherwise premature filing." *Chalif v.

Spitzer*, No. 05-CV-1355, 2008 WL 1848650, at *13 (N.D.N.Y. Apr. 23, 2008). "The

administrative review process requiring exhaustion is defined not by the PLRA, but by the prison

grievance process itself – that is, the rules of the particular institution where the inmate is housed

govern any assessment of administrative exhaustion." *Rodriguez v. City of N.Y.*, No. 21-CV-

1384, 2023 WL 2368985, at *3 (S.D.N.Y. Mar. 6, 2023).

At PCCF, the grievance procedures are set out in the Inmate Rules & Regulations.

(Randazzo Decl. Ex. C at 52-53.) *Gallo-Kappus v. Putnam Cnty.*, No. 15-CV-6896, 2018 WL

2388535, at *7 (S.D.N.Y. May 5, 2018). To complete the grievance process, Plaintiff was

required to complete a grievance form obtained from the housing unit officer, which form would then go to the grievance coordinator who would investigate the grievance and make a decision that Plaintiff could either accept or appeal to the facility administrator.  (*See* Randazzo Decl. Ex. C at 52.)  Plaintiff testified that he never filed a grievance about the events that occurred on June 5, 2018.  (P's Depo. at 68:10-19.)  Thus, Defendants argue that the PLRA bars Plaintiff's claims concerning that incident.

Although exhaustion is generally mandatory, the Supreme Court has identified three circumstances under which administrative remedies may be deemed "unavailable" to an inmate, such that an inmate is not required to exhaust.  *See Ross v. Blake*, 578 U.S. 632, 642 (2016).

> An administrative remedy is *de facto* unavailable and, thus, exhaustion is not required: (1) where the process operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) where the process is so opaque that it becomes, practically speaking, incapable of use; and (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Rodriguez*, 2023 WL 2368985, at *3.  "If the defendant has met its burden of establishing the existence and applicability of the grievance policy, the *plaintiff* bears the burden of establishing *de facto* unavailability."  *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 453 (2d Cir. 2022) (emphasis in original).

In *Romano v. Ulrich*, 49 F.4th 148 (2d Cir. 2022), the Second Circuit considered whether a prisoner had failed to exhaust his administrative remedies where he was required to file his grievance within twenty-one days of the relevant incident occurring at a Department of Corrections and Community Supervision ("DOCCS") facility, but was first held in an infirmary for five days after the incident, then held in an observation cell at the prison for eight days, then transferred to the Central New York Psychiatric Center in the custody of the New York State Office of Mental Health ("OMH") where he was held for over 6 months, then transferred to a

different DOCCS facility, *see id.* at 151. The prisoner had attempted to file his grievance while in the custody of OMH, but the grievance was rejected because it was untimely and not filed at the facility where he was housed, and he was not allowed to file grievances while in OMH custody. *Id.* He also attempted to file the grievance when he was transferred to the new DOCCS facility, but that filing was also rejected. *Id.* The Second Circuit held that the prisoner did not fail to exhaust his administrative remedies because his transfer out of DOCCS custody into OMH custody "served as a dead end that effectively rendered his administrative remedy unavailable to him." *Id.* at 150.

Similarly, here, while Plaintiff did not make the same efforts as the plaintiff in *Romano*, he was transferred from PCCF within two days of the incident such that "his administrative remedy became incapable of use for its intended purpose in accordance with the applicable procedural rules." *Id.* at 156. Indeed, "an administrative remedy may properly be considered unavailable if the act or occurrence that gives rise to the claim occurs shortly before the inmate is transferred." *Hartry v. Cnty. of Suffolk*, 755 F. Supp. 2d 422, 433-34 (E.D.N.Y. 2010) (collecting cases). In *Hartry*, the court explained that

> in cases where an inmate is transferred from one state-run facility to another, the fact that the inmate may not have had time to file the claim while at the facility where the claim arose is not relevant because the grievance process is governed by a single set of regulations applicable to all state correctional facilities and therefore an inmate has the means to follow the process regardless of which state facility houses him.

*Id.* at 434. In contrast, county-run facilities each have their own grievance procedure, and where they contain no requirement that an inmate file from a transferee facility a grievance against a transferor facility, and do not notify an inmate of any such procedure, exhaustion is excused. *Id*. at 434-35.

The reasoning of *Hartry* applies here, as Plaintiff was transferred from a county-run facility to a federal facility.  Defendants point to "no indication, either in the governing law or the Inmate [Rules & Regulations], that [] Plaintiff was required to file a grievance at the [PCCF] from [federal prison], and there is certainly nothing in the record to indicate that an uncounseled prisoner would be aware if this was indeed a requirement." *Id.* at 435.  While Plaintiff testified that he still possessed a draft of his grievance after the transfer, Defendants' submission does not suggest that Plaintiff could pursue the state prison grievance process while in federal custody. *See Key v. Toussaint*, 660 F. Supp. 2d 518, 525 (S.D.N.Y. 2009) ("The defendants do not explain how Key could have submitted a grievance to a state grievance clerk while he was located in a federal facility.").  Thus, as Plaintiff argued in his pre-motion letter, (ECF No. 66 at 1), he was hindered from undergoing the grievance procedure due to his transfer from PCCF to BOP custody only two days after the incident.  Drawing all inferences in Plaintiff's favor, as the Court must, *Jeffreys*, 426 F.3d at 553, the Court concludes that the transfer rendered his administrative remedies unavailable, such that he was not required to exhaust them.  At the very least, the information in the Inmate Rules & Regulations and the Minimum Standards are "opaque" as to what procedure the inmate is to follow if transferred out before the five days are up.[9] Accordingly, Plaintiff's claims are not properly dismissed on the basis that he failed to exhaust his administrative remedies, and I will address the merits.

---

[9] Defendants argue that despite any failure to file due to the transfer, "Plaintiff could have belatedly filed his grievance and progressed through the appeal process pursuant to the Minimum Standards."  (ECF No. 70 ("Ds' Mem.") at 4.)  But Defendants point to no section of the Minimum Standards or the Inmate Rules & Regulations that outlines such a process or that would have authorized Plaintiff to do so.

**B.  Sgt. Michael Villani and Personal Involvement**

Defendants argue that the claims against Sgt. Michael Villani must be dismissed because he was not personally involved in the June 5, 2018 incident.  (*See* Ds' Mem. at 4-5.)

"[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."  *J.V. v. Lake*, No. 23-CV-3419, 2024 WL 3236823, at *3 (S.D.N.Y. June 28, 2024); *see Swinton v. Livingston Cnty.*, No. 21-1434, 2023 WL 2317838, at *3 (2d Cir. Mar. 2, 2023) (summary order) ("We have long held that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983.").  "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Plaintiff's Amended Complaint dated September 14, 2021 lists Sgt. M. Villani as a Defendant.  (*See* ECF No. 12 at 7.)  On February 6, 2023, Defendants provided Plaintiff with their Rule 26 initial disclosures, identifying Sgt. Alfred Villani as a witness and including his inter-office memorandum, dated June 5, 2018, which described his personal involvement in the incident and listed the others present (who did not include Sgt. M. Villani).  (Ds' 56.1 Stmt. ¶ 51; *see* Randazzo Decl. Exs. F, I.)  At his deposition on July 6, 2023, Plaintiff testified that although he believed the sergeant involved in the incident was M. Villani, there were two "Sergeant Villanis" and he was not sure whether he had sued the right one.  (P's Depo. at 79:2-80:10.)

13

Had Plaintiff concluded that he should have sued Sgt. Alfred Villani and sought to substitute him as a defendant in place of Sgt. M. Villani, he might have succeeded under Federal Rule of Civil Procedure 15, even if the three-year statute of limitations had run.[10]

Fed. R. Civ. P. 15(c)(1) provides that

[a]n amendment to a pleading relates back to the date of the original pleading when . . . (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Thus, "a plaintiff who knows that a prospective defendant exists, but, due to a misunderstanding about that party's status or role with respect to her claim, mistakenly chooses to sue a different defendant, may still satisfy the requirements of Fed. R. Civ. P. 15." *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-4, 2015 WL 13650032, at *9 (E.D.N.Y. June 24, 2015). "[T]he focus of the Rule 15 inquiry is a potential defendant's reasonable beliefs regarding whether a plaintiff failed to name him because of a mistake." *Abdell v. City of N.Y.*, 759 F. Supp. 2d 450, 457 (S.D.N.Y. 2010). Here, Plaintiff failed to name Sgt. Alfred Villani but named his relative Sgt. M. Villani (referring to Sgt. Michael Villani) who worked in the same facility. Thus this appears to be a "wrong party case," *Atakhanova v. Home Fam. Care Inc.*, No. 16-CV-6707, 2019 WL 2435856, at *6 (E.D.N.Y. Feb. 19, 2019), in that Plaintiff made a

---

[10] The statute of limitations for a § 1983 action in New York is three years. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 674 (2d Cir. 2009) (summary order). Under federal law, a claim arising under § 1983 "accrues," meaning the statute of limitations starts to run, when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002); *see Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) ("[W]hen a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run . . . ."). The relevant incident occurred on June 5, 2018. Therefore, the statute of limitations ran on June 5, 2021.

mistake about the identity of the proper party.  Accordingly, Plaintiff could have sought leave to amend the complaint to name the correct defendant upon receipt of the memorandum or thereafter, but he has not done so to date.  In any event, as the record contains no evidence that Sgt. Michael Villani was involved in the incident on June 5, 2018, and it is clear that Sgt. Alfred Villani was the sergeant present at that time, (Randazzo Decl. Ex. F), the claims against Sgt. Michael Villani must be dismissed.

### C.  C.O. St. Auburn and Relation Back

Defendants argue that Plaintiff's claims against C.O. St. Auburn must be dismissed because they are time-barred.  (Ds' Mem. at 6.)

Plaintiff amended his complaint to name St. Auburn more than three months after the statute of limitations ran on June 5, 2021.  Because the statute of limitations ran before the Amended Complaint was filed, the claims in the Amended Complaint are only viable if they relate back to the initial complaint.

Both Federal Rules of Civil Procedure 15(c)(1)(C) and 15(c)(1)(A) are relevant.  As noted, Rule 15(c)(1)(C) allows relation back when the following conditions are met:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party knew or should have known that, but for a mistake of identity, the original action would have been brought against it; and [4] the second and third criteria are fulfilled within the period provided by Rule 4(m) for serving the summons and complaint, and the original complaint [was] filed within the limitations period.

*Ceara v. Deacon*, 916 F.3d 208, 211 (2d Cir. 2019).  It is well established that "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued."  *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993).  "John Doe substitutions . . . may only be accomplished when

all of the specifications of [Federal Rule of Civil Procedure] 15(c) are met." *Hogan*, 738 F.3d at 517.

The claim against C.O. St. Auburn does not relate back to the initial complaint. An amendment to replace a John Doe defendant is not to correct a mistake but to correct a lack of knowledge and therefore does not fall under Rule 15(c)(1)(C). *Ceara*, 916 F.3d at 213. There is nothing in the record suggesting a mistake of identity. Plaintiff knew who he wished to sue and simply did not know his name, and by waiting until the eve of the statute of limitations to file his initial complaint, Plaintiff did not leave himself sufficient time to obtain the name via a *Valentin* order or otherwise. See *Columna v. City of N.Y.*, No. 19-CV-03801, 2020 WL 5018199, at *4 (S.D.N.Y. Aug. 25, 2020) (Second Circuit has made clear that carve-out of Rule 15(c)(1)(C) does not apply to amendments that replace John Doe with properly-named party and thus, to extent plaintiff seeks to use litigation to identify other unknown defendants, lawsuit must be initiated with enough time to discover identities and then amend complaint).

Under Federal Rule of Civil Procedure 15(c)(1)(A), an amendment to a pleading relates back to the date of the original pleading when "the law that provides the applicable statute of limitations allows relation back." *Cotto v. City of N.Y.*, 803 F. App'x 500, 502 (2d Cir. 2020) (summary order). "[I]n a federal case applying New York law[,] a plaintiff seeking to replace a 'John Doe' defendant with the properly-named defendant may avoid a statutory time bar by satisfying the requirements of [New York] C[ivil] P[ractice] L[aw] [and] R[ules ("CPLR")] § 1024." *Id.* That statute permits John Doe substitutions, but the party must meet two requirements: "First, the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Hogan*, 738 F.3d at 519. "Second, the party must describe the John Doe party in such form as will fairly apprise the party that he is the

intended defendant." *Id.* Because Plaintiff sued only days before the expiration of the statute of limitations[11] and has not identified any actions he took to learn the Doe defendants' identities before the expiration of the limitations period, he fails to satisfy the first prong of CPLR § 1024. *See Jones v. City of N.Y.*, 571 F. Supp. 3d 118, 130-31 (S.D.N.Y. 2021). The claim against C.O. St. Auburn is time-barred and therefore must be dismissed.

### D. Excessive Force and Retaliation Claims Against C.O. Lotts

The remaining claims are Plaintiff's excessive force and retaliation claims against C.O. Lotts. I will address each in turn.

#### 1. Excessive Force Claim

Courts in this District hold that claims of excessive force by inmates who have been convicted but not yet sentenced are governed by the Eighth Amendment. *See, e.g.*, *Mays v. Falu*, No. 18-CV-6145, 2019 WL 6619330, at *6 (S.D.N.Y. Dec. 5, 2019); *Morrison v. United States*, No. 17-CV-6779, 2019 WL 5295119, at *4 (S.D.N.Y. Oct. 18, 2019); *Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 539 (S.D.N.Y. 2005).

"The Eighth Amendment prohibits the infliction of cruel and unusual punishments, including the unnecessary and wanton infliction of pain." *Mustafa v. Pelletier*, No. 22-2187, 2023 WL 7537625, at *1 (2d. Cir. Nov. 14, 2023) (summary order). "The infliction of pain is

---

[11] Plaintiff's initial complaint was received by the Clerk of Court on June 11, 2021, but it is dated June 3, 2021. (*See* ECF No. 2.) "Under the prison mailbox rule, a [document] is considered filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Davis v. United States*, No. 21-2471, 2024 WL 980637, at *1 n.3 (2d Cir. Mar. 7, 2024) (summary order). Although the record does not reflect when Plaintiff's initial complaint was given to prison authorities, I presume it was June 3, 2021, the date it was signed. *See Graham v. Piccolo*, No. 20-CV-1684, 2024 WL 3552787, at *5 (W.D.N.Y. July 26, 2024) ("When there is no indication when a *pro se* petitioner handed his petition over to prison officials for mailing, courts in this Circuit have assumed that it was filed on the date it was signed.").

unnecessary and wanton, for instance, when it is totally without penological justification."
*Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002).  Because prison officials must quickly and
decisively balance the need to maintain order against the risk of injury to inmates, "prison
administrators should be accorded wide-ranging deference in the adoption and execution of
policies and practices that in their judgment are needed to preserve internal order and discipline
and to maintain institutional security."  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).

To succeed on an Eighth Amendment cruel and unusual punishment claim, Plaintiff must
establish both an objective and subjective component.  The objective component focuses on
whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional
violation."  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009)*.*  "Not every push or shove, even
if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's
constitutional rights."  *Johnson v. Glick*, 481 F. 2d 1028, 1033 (2d Cir. 1973).  *De minimis*
applications of physical force which are not "repugnant to the conscience of mankind" do not
rise to the level of a constitutional violation.  *Hudson*, 503 U.S. at 9-10.  But "when prison
officials maliciously and sadistically use force to cause harm," contemporary standards of
decency are always violated regardless of "whether or not significant injury is evident."  *Id.* at 9.

"The subjective component of the claim requires a showing that the defendant had the
necessary level of culpability, shown by actions characterized by wantonness in light of the
particular circumstances surrounding the challenged conduct."  *Harris v. Miller,* 818 F.3d 49, 63
(2d Cir. 2016).  The Second Circuit has instructed that

> [t]o determine whether defendants acted maliciously or wantonly, a court must examine
> several factors including: the extent of the injury and the mental state of the defendant, as
> well as the need for the application of force; the correlation between that need and the
> amount of force used; the threat reasonably perceived by the defendants; and any efforts
> made by the defendants to temper the severity of a forceful response.

*Harris*, 818 F.3d at 63 (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)).

Even if a Plaintiff's claim of excessive force is thin, factual disputes must be left to the jury. *Wright*, 554 F.3d at 269 ("[W]here a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak.") (collecting cases); *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.").

Defendants argue that C.O. Lotts's use of force did not violate Plaintiff's Eighth Amendment Rights because C.O. Lotts's twisting Plaintiff's arm "was made in a good-faith effort to restore discipline, rather than to maliciously and sadistically inflict harm." (Ds' Mem. at 8.) According to Plaintiff's deposition testimony, C.O. Lotts entered his cell along with the other officers, the officers "told [him] to submit to the handcuffs," he refused to comply with their orders and stood with his arms folded across his chest, the officers tried to pull his arms to cuff him, and after Sgt. Villani punched him in the face, C.O. Lotts twisted his arm back. (*See* P's Depo. at 39:23-41:11, 43:8-44:22.) He further testified that while he was still resisting being cuffed, "[t]hey stopped trying to cuff [him and] just started beating [him] up." (*Id.* at 45:17-21.) He stated that when C.O. Lotts twisted his arm, "it kind of put [him] in a position where [he was] not resisting anymore, because [he was] feeling [his] arm, like, twist out of the socket." (*Id.* at 47:19-48:2.) He stated that C.O. Lotts did not use any force other than twisting his arm, but that he sustained an injury to his shoulder. (*Id.* at 48:16-23.)

I will assume that the ongoing popping, tingling, loss of sensation and pain from pushups Plaintiff says he experiences in his shoulder, (*id.* at 83:10-85:8), amounts to an injury that is sufficiently serious to satisfy the objective prong. But Plaintiff fails on the subjective prong because his only allegation against C.O. Lotts cannot reasonably be regarded as excessive force, and thus a rational jury could not conclude that C.O. Lotts personally violated his rights.

Plaintiff testified that after Plaintiff folded his arms across his chest and refused to be cuffed, (*id.* at 43:19-22), and after the officers were trying without success to pull his arms to cuff him, (*id.* at 44:8-9), the sergeant punched him and the altercation began, (*id.* at 44:12-15). Plaintiff testified that during the altercation there was a lot of twisting and grabbing in an effort to find pressure points "to make [him] relax and just let [the officers] cuff [him]," (*id.* at 45:13-16), and that once he was cuffed, "it was over with," (*id.* at 61:18-19). According to Plaintiff, officers punched him and grabbed his crotch, but C.O. Lotts only twisted Plaintiff's arm back. (*Id.* at 44:9-45:7, 48:16-19.) Plaintiff then testified: "I was getting beat up at that point. They stopped trying to cuff me. They just started beating me up." (*Id.* at 45:19-21.) Aside from the fact that Plaintiff cannot testify as to what the officers' intentions were, Plaintiff does not attribute any of the beating to C.O. Lotts, and indeed testified specifically that C.O. Lotts did not do anything aside from twisting his arm. (*Id.* at 47:19-48:19.)[12]

It is plain that C.O. Lotts's action of twisting Plaintiff's arm back, at a time he would not let the officers cuff him, was an effort to cuff Plaintiff and wholly justified in the circumstances. Even if other officers were using excessive force, a subject on which I express no opinion, no reasonable jury could conclude that what Lotts did – twisting Plaintiff's arm behind him in an

---

[12] Like Plaintiff's deposition testimony, Plaintiff's AC does not allege anything against C.O. Lotts other than his twisting Plaintiff's arm. (*See* ECF No. 12 at 5.)

effort to handcuff him – was excessive, given that Plaintiff refused to cooperate with being handcuffed. *See Kalfus v. New York & Presbyterian Hosp.*, 706 F. Supp. 2d 458, 472 (S.D.N.Y. 2010) (when plaintiff refused to be handcuffed, force used to cuff him reasonable, despite injury to rotator cuff, plaintiff not posing a physical threat, and offense not being severe), *aff'd*, 476 F. App'x 877 (2d Cir. 2012) (summary order); *Bauer v. City of Hartford*, No. 07-CV-1375, 2010 WL 4429697, at *11 (D. Conn. Oct. 29, 2010) (officer grabbing plaintiff's arms "so forcefully that she sustained black and blue bruises on her arms" was objectively reasonable because the plaintiff "had repeatedly resisted or ignored police requests prior to her arrest," leading officer to reasonably believe that she would resist arrest and "a minimal amount of force was necessary to gain control of her to effectuate the arrest"). Indeed, it is hard to imagine how to cuff an uncooperative subject other than by twisting his arm back. Even using a taser or pepper spray where a plaintiff refuses to comply with cuffing is not excessive. *See McKnight v. Vasile*, No. 11-CV-6328P, 2017 WL 1176051, at *28 (W.D.N.Y. Mar. 30, 2017) (pepper spray); *Lee v. City of Utica, New York*, No. 10-CV-1446, 2013 WL 12140336, at *4 (N.D.N.Y. Mar. 5, 2013) (taser). Given that by Plaintiff's own account, he refused to cooperate with cuffing such that force was required, and C.O. Lotts did no more than manipulate Plaintiff's arm in an effort to achieve that cuffing, a reasonable jury would have to find C.O. Lotts's use of force reasonable. *See generally Sanchez v. Chapman*, No. 19-CV-1314, 2022 WL 657621, at *8 (D. Conn. Mar. 4, 2022) ("suspect's attempt to resist arrest or threaten a police officer justifies the officer's use of a limited degree of force") (collecting cases).

The motion is therefore granted as to C.O. Lotts's use of force.

2.      **First Amendment Retaliation**

Plaintiff alleges that the June 5, 2018 incident occurred in retaliation against him for previous grievances he filed at the Facility. (*See* ECF No. 14 at 2.)

To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a prisoner must demonstrate: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." *Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013) (summary order). Once a plaintiff has "carrie[d] that burden, the defendants must show by a preponderance of the evidence that they would have [taken the allegedly retaliatory action] even in the absence of the protected conduct." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). If the defendant meets this burden, summary judgment is appropriate. *See Davidson v. Chestnut*, 193 F.3d 144, 149 (2d Cir. 1999). In other words, "[r]egardless of the presence of retaliatory motive, . . . a defendant may be entitled to summary judgment if he can show dual motivation, *i.e.*, that even without the improper motivation the alleged retaliatory action would have occurred." *Scott*, 344 F.3d at 287-88 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (affirming dismissal on summary judgment because correction officer issuing misbehavior report had mixed motives and report "would have been issued on proper grounds alone" because plaintiff "had in fact committed the prohibited conduct"); *see also Sher v. Coughlin*, 739 F.2d 77, 81-82 (2d Cir. 1984) (affirming summary judgment dismissal of prisoner's retaliation claim where dual motivation existed for prisoner's transfer to another facility).

"Normally, determination of that issue of hypothetical causation requires fact-finding." *Sher*, 739 F.2d at 82. "But in some cases the undisputed facts may demonstrate that the

challenged action would have been taken on the valid basis alone, and such a conclusion will frequently be readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." *Id.* Indeed, when evaluating retaliation claims brought by inmates, the Second Circuit instructs that courts employ "skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015). "Accordingly, a First Amendment retaliation claim must be supported by specific and detailed factual allegations and not stated in wholly conclusory terms." *Bonie v. Annucci*, No. 20-CV-640, 2023 WL 2711349, at *12 (S.D.N.Y. Mar. 30, 2023).

As to the first prong, it is undisputed that the filing of a grievance is protected activity. *See Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) ("[T]he filing of prison grievances is a constitutionally protected activity."); *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) ("[Plaintiff] has sufficiently alleged . . . participation in protected activity: the use of the prison grievance system . . . ."); *Morgan v. Dzurenda*, No. 14-CV-966, 2017 WL 1217092, at *12 (D. Conn. Mar. 31, 2017) ("The filing of grievances is a constitutionally protected activity . . . .").

As to the second prong, a physical assault can be considered an adverse action, and "need not rise to the level of an Eighth Amendment excessive force violation in order to be considered" as such for purposes of a First Amendment retaliation claim. *Hodgson v. Wood*, No. 22-CV-275, 2023 WL 9375373, at *4 (N.D.N.Y. Nov. 21, 2023), *report and recommendation adopted sub nom. Hodgson v. Giardino*, 2024 WL 248730 (N.D.N.Y. Jan. 23, 2024). Thus, the incident here could constitute an adverse action.

As to the third prong, Defendants argue that there is no evidence that officers used force to retaliate again Plaintiff for filing grievances and that the record shows only that the officers' use of force on June 5, 2018, "was a product of Plaintiff's continued refusals to obey commands to exit his cell and to submit to handcuffing."  (Ds' Mem. at 9.)  On a motion for summary judgment, the moving party may satisfy its initial burden of demonstrating that there is no genuine issue of material fact for trial by pointing out the absence of evidence to support the non-movant's claims.  *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991). Once the moving party does so, "the nonmoving party must provide more than conclusory allegations, conjecture, and speculation to refute this showing."  *Garcon v. Starwood Hotel & Resorts Worldwide, Inc.*, No. 10-CV-5720, 2013 WL 592661, at *2 (S.D.N.Y. Feb. 13, 2013). "Rather, to survive a summary judgment motion, the nonmoving party must present specific admissible evidence in support of its contention that there is a genuine dispute as to material facts."  *Id.*

Defendants have pointed to the absence of evidence of retaliatory motive, and I have searched the record for evidence in support of Plaintiff's position that the use of force was retaliation for grievances he had filed in the past.  I find none.  Plaintiff's statements to that effect in his deposition are wholly conclusory, (P's Depo. at 64:9-11; 74:8-75:8), and do not suffice to defeat summary judgment, *see, e.g., Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) ("[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations."); *Woodward v. Afify*, No. 14-CV-856, 2018 WL 9875253, at *10 (W.D.N.Y. Sept. 28, 2018) ("a plaintiff must set forth non-conclusory allegations to avoid summary judgment"), *report and recommendation adopted*, 2019 WL

5394217 (W.D.N.Y. Oct. 22, 2019); *Herbert v. Raczkowski*, No. 24-CV-485, 2024 WL 3694215, at *8 (W.D.N.Y. Aug. 5, 2024) ("Without any non-conclusory allegations that the grievances and the wrongful conduct alleged are causally connected, his retaliation claims are little more than unadorned, the-defendant-unlawfully-harmed-me accusations."); *Crenshaw v. Dep't. of Corr.*, No. 24-CV-439, 2024 WL 3638242, at *9 (D. Conn. Aug. 1, 2024) ("Plaintiff has not alleged specific and detailed factual allegations to support a claim that he sustained adverse action due to his protected activity. . . . Plaintiff's statement that all Defendants took some form of retaliation against him for writing grievances and complaints is wholly conclusory. Consistent with the Second Circuit's instruction to approach retaliation claims with some measure of skepticism, the court cannot permit Plaintiff to proceed on First Amendment retaliation claims absent specific facts to support a causal connection between his protected conduct and an adverse action."); *Young v. McGill*, No. 09-CV-1205, 2011 WL 6223042, at *6 (D. Conn. Dec. 8, 2011) ("The plaintiff concludes that the defendants denied him dental treatment because he filed many inmate requests and grievances. He cites no evidence to support his assumption. Absent any specific fact demonstrating a retaliatory motive for the defendants' conduct, the retaliation claim is insufficient."), *modified on other grounds on reconsideration*, 2012 WL 401022 (D. Conn. Feb. 8, 2012).

Moreover, even if the misbehavior report issued by C.O. Tommarello was motivated by retaliation – a subject on which I express no opinion – Plaintiff has provided no specific facts from which a reasonable jury could find that C.O. Lotts, in pulling back Plaintiff's arm, was motivated by retaliation, as opposed to a desire to cuff an inmate who had refused to comply. And even if Lotts had mixed motives, it is undisputed that Plaintiff refused to cooperate with

being cuffed, and thus using force to cuff him "would have [occurred] on proper grounds alone" because Plaintiff "in fact committed the prohibited conduct." *Lowrance*, 20 F.3d at 535.

Accordingly, the motion is granted as to the retaliation claim against C.O. Lotts.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion is GRANTED.  The Clerk of Court is respectfully directed to update the docket as set forth in footnote one, terminate the pending motion, (ECF No. 69), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated:  September 23, 2024
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

26